**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **AMY M. GARZA,**<br><br>          **Plaintiff,**<br><br>**v.**<br><br>**MICHAEL J. ASTRUE,**<br>**Commissioner of Social Security,**<br><br>          **Defendant.** | **MEMORANDUM DECISION**<br>**AND ORDER**<br><br>**Case No. 2:10-cv-1079-PMW**<br><br><br>**Magistrate Judge Paul M. Warner** |

Before the court is Amy M. Garza's ("Plaintiff") appeal of Michael J. Astrue's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401-434. After careful consideration of the written briefs and the complete record, the court has determined that oral argument is not necessary in this case.

## BACKGROUND

In February 2007, Plaintiff applied for DIB, alleging disability beginning on May 2, 2006.[1]  Plaintiff's application was denied initially and upon reconsideration.[2]  In December 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),[3] and that hearing was

---

[1]  *See* docket no. 10, Administrative Record ("Tr. _____") 104-05.

[2]  *See* Tr. 62-63.

[3]  *See* Tr. 5-6.

held on July 31, 2008.[4]  On November 12, 2008, the ALJ issued a written decision denying

Plaintiff's claim for DIB.[5]  In September 2010, the Appeals Council denied Plaintiff's request for

review,[6] making the ALJ's decision the Commissioner's final decision for purposes of judicial

review.  *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

On November 3, 2010, Plaintiff filed her complaint in this case, which was assigned to

District Judge Dee Benson.[7]  On February 16, 2011, both parties consented to having a United

States Magistrate Judge conduct all proceedings in the case, including entry of final judgment,

with appeal to the United States Court of Appeals for the Tenth Circuit.[8]  Consequently, the case

was reassigned to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(c) and rule 73

of the Federal Rules of Civil Procedure.[9]  After receiving an extension of time,[10] the

Commissioner filed his answer on March 8, 2011,[11] and the court received the Administrative

Record the same day.[12]

---

[4]  *See* Tr. 21-60.

[5]  *See* Tr. 7-20.

[6]  *See* Tr. 1-4.

[7]  *See* docket no. 3.

[8]  *See* docket no. 7.

[9]  *See id.*

[10]  *See* docket nos. 5-6.

[11]  *See* docket no. 9.

[12]  *See* docket no. 10.

Plaintiff filed her opening brief on May 6, 2011.[13]  After receiving an extension of time,[14] the Commissioner filed his responsive brief on July 1, 2011.[15]  Plaintiff filed her reply brief on July 15, 2011.[16]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

---

[13] *See* docket no. 14.

[14] *See* docket nos. 15-16.

[15] *See* docket no. 17.

[16] *See* docket no. 18.

A five-step evaluation process has been established for determining whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).  If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.  *See* 20 C.F.R. § 404.1520(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity.  If [the claimant] is, disability benefits are denied.  If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.  If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . .  If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.  If not, the evaluation proceeds to the fourth step . . . ."  *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(iii).  At the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv).  "If the claimant is able to perform his previous work, he is not

disabled." *Williams*, 844 F.2d at 751.  If, however, the claimant is not able to perform his

previous work, he "has met his burden of proof, establishing a prima facie case of disability."  *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."  *Id*.  At

this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

"whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work

in the national economy in view of his age, education, and work experience."  *Id*.; *see* 20 C.F.R.

§ 404.1520(a)(4)(v).  If it is determined that the claimant "can make an adjustment to other

work," 20 C.F.R. § 404.1520(a)(4)(v), he is not disabled.  If, on the other hand, it is determined

that the claimant "cannot make an adjustment to other work," *id*., he is disabled and entitled to

benefits.

## ANALYSIS

In support of her claim that the Commissioner's decision should be reversed, Plaintiff

argues that the ALJ erred:  (1) by improperly rejecting the opinions of Plaintiff's treating and

reviewing medical providers, (2) in evaluating the credibility of Plaintiff's subjective complaints,

(3) in conducting the analysis at step four of the sequential evaluation process, and (4) by relying

on vocational expert testimony ("VE") that conflicted with the Dictionary of Occupational Titles

("DOT").  The court will address each argument in turn.

### I.  Treating and Reviewing Medical Opinions

Plaintiff argues that the ALJ improperly rejected the opinions of one of Plaintiff's treating

sources, Dr. Noel Schenk ("Dr. Schenk").  Plaintiff also argues that the ALJ failed to account for

certain limitations expressed in the opinions of two nonexamining physicians, Dr. Dawson

Hedges ("Dr. Hedges") and Dr. Thomas Atkin ("Dr. Atkin").

> In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for controlling weight.  To make this determination, the ALJ . . . must first consider whether the opinion is well[ ]supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well[ ]supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

> Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. §] 404.1527.  Those factors are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

> Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion . . . that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotations and citations omitted)

(sixth alteration in original); *see also* 20 C.F.R. § 404.1527(c).

6

With respect to the opinions of nonexamining physicians, the relevant regulation indicates that the ALJ still considers those opinions as opinion evidence. *See* 20 C.F.R. § 404.1527(e). Further, the ALJ is required to consider nonexamining opinions in accordance with the same standards used for considering treating source opinions. *See id.*

As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g.*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).

First, Plaintiff asserts that the ALJ erred by rejecting the opinion of Dr. Schenk. Because the ALJ concluded that Dr. Schenk's opinion was entitled to diminished weight, it is implicit that the ALJ also viewed that opinion as not being entitled to controlling weight. Accordingly, the court turns to the deference and weight the ALJ gave to Dr. Schenk's opinion. *See Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. § 404.1527(c).

In her decision, the ALJ stated that she was not accepting Dr. Schenk's opinion of November 1, 2007, which indicated that Plaintiff had numerous marked and extreme limitations in mental functioning. The ALJ stated that she was rejecting that opinion because it was not well supported by medically acceptable clinical and diagnostic techniques, was not consistent with Plaintiff's description of her activities of daily living, and was inconsistent with the other medical evidence in the record.

Plaintiff contends that the ALJ failed to identify the alleged inconsistencies between Dr. Schenk's opinion and the remaining medical evidence in the record. That argument fails. While

7

it is true that the ALJ did not specifically identify that record evidence in the portion of her decision concerning Dr. Schenk's opinion, another portion of the ALJ's decision contains a thorough discussion of the medical evidence in the record.[17]  A review of that portion of the ALJ's decision demonstrates that the ALJ discussed substantial evidence in the record that was inconsistent with the extreme limitations contained within Dr. Schenk's opinion.

Plaintiff also argues that the ALJ failed to account for certain limitations expressed in the opinions of two nonexamining physicians, Dr. Hedges and Dr. Atkin.  Plaintiff asserts that the ALJ erred by concluding that Plaintiff had only mild mental health limitations when both Dr. Hedges and Dr. Atkin opined that Plaintiff had several moderate mental health limitations. Plaintiff also asserts that the ALJ erred by failing to include a limitation expressed by Dr. Hedges, namely, that Plaintiff needed a low stress job with minimal contact with others.  In essence, Plaintiff argues that the ALJ was required to include the above-referenced limitations in Plaintiff's RFC and in the hypothetical provided to the VE.  That argument is without merit.  The court concludes that there was nothing improper about the ALJ's decision to omit the above-referenced limitations expressed by Dr. Hedges and Dr. Atkin.  An ALJ is not required to include every limitation expressed by every opinion in the record.  Instead, it is the ALJ's responsibility to assess Plaintiff's RFC based on all of the record evidence.  *See id*. § 404.1546; *see also* Social Security Ruling ("SSR") 96-5.  Furthermore, opinions about a claimant's RFC are not dispositive because the determination of Plaintiff's RFC issue is reserved to the

---

[17]  *See* Tr. 16, 18-19.

Commissioner.  *See* 20 C.F.R. § 404.1527(d)(2); SSR 96-5; *see also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.").

Based on the foregoing, the court concludes that the ALJ did not err in her treatment of the opinions of Dr. Schenk, Dr. Hedges, and Dr. Atkin.

## II.  Credibility

Plaintiff argues that the ALJ erred in evaluating the credibility of Plaintiff's subjective complaints.  In general, "[c]redibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations and citation omitted).  Although credibility determinations "should be closely and affirmatively linked to substantial evidence," *id*. (quotations and citation omitted), they "do[] not require a formalistic factor-by-factor recitation of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

SSR 96-7p clarifies the standards an ALJ must apply when evaluating the credibility of an individual's statements, including his or her allegations of pain.  *See* SSR 96-7p.  In addition to the objective medical evidence, an ALJ should consider the following factors when assessing the credibility of an individual's statements:

1.  The individual's daily activities;
2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.  Factors that precipitate and aggravate the symptoms;
4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*; *see* 20 C.F.R. § 404.1529(c); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

In this case, the ALJ considered proper factors in reaching the determination that Plaintiff's testimony and her subjective complaints were not fully credible. First, the ALJ properly relied upon the fact that evidence of Plaintiff's daily activities was inconsistent with Plaintiff's complaints and her testimony about the degree of her limitations. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 96-7p. The ALJ noted that the evidence of record established that Plaintiff was able to independently perform her activities of daily living, including caring for her personal needs, caring for a young son, preparing meals, doing light housework, doing laundry, shopping, watching television, driving, visiting with friends, attending church, and going to medical and counseling appointments.[18] Second, the ALJ properly noted that the record evidence established that Plaintiff's medical evaluations had been within normal limits, she had no persistent neural deficits, her pain was controlled with medication, she had not required any extended periods of hospitalizations for her physical or mental impairments.[19] *See* 20 C.F.R.

---

[18]   *See* Tr. 252.

[19]   *See* Tr. 17-18.

§ 404.1529(c)(3)(iv)-(vi); SSR 96-7p.  Third, the ALJ properly referenced Plaintiff's noncompliance with taking her prescribed medications.[20]  *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi); SSR 96-7p.  Finally, in reaching her overall credibility determination, the ALJ properly relied upon her own observations of Plaintiff's evasive testimony and lack of candor at the administrative hearing.  *See* SSR 96-7p ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.").

To the extent that Plaintiff attempts to reargue the weight of the evidence before the ALJ on this issue, the court notes that such a tactic is futile on appeal because it is not this court's role to reweigh the evidence before the ALJ.  *See Madrid*, 447 F.3d at 790.  Indeed, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.  *See, e.g.*, *Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247.  From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)).

The ALJ articulated sufficient reasoning and relied upon proper factors in determining that, overall, Plaintiff's testimony was not fully credible.  Furthermore, the court concludes that

---

[20]  *See* Tr. 18.

11

the ALJ's determination is "closely and affirmatively linked to substantial evidence." *Kepler*, 68 F.3d at 391 (quotations and citation omitted).  Accordingly, the court concludes that the ALJ did not err in reaching her determination about Plaintiff's credibility.

### III.  Step Four

Plaintiff argues that the ALJ erred in conducting the analysis at step four of the sequential evaluation process.  At step four of her decision, the ALJ concluded that Plaintiff could return to her past relevant work as a telemarketer.  In addition, the ALJ stated that Plaintiff could perform a significant number of other jobs in the national economy, including those of a cashier, assembler, and bookkeeper.

In her opening brief, Plaintiff argues that the ALJ failed to comply with the requirements of SSR 82-62 when determining that Plaintiff could return to her past relevant work as a telemarketer.  Plaintiff's opening brief does not include any arguments about the ALJ's statement that Plaintiff could also perform the jobs of cashier, assembler, and bookkeeper.  In his responsive brief, the Commissioner argues, among other things, that any errors made by the ALJ with respect to Plaintiff's past relevant work as a telemarketer are harmless because the ALJ also stated that Plaintiff could preform those three other jobs.  In her reply brief, Plaintiff addresses the Commissioner's argument by advancing the catch-all assertion that she is precluded from performing all work.

The court agrees with the Commissioner's argument concerning harmless error.  Even if, as Plaintiff contends, the ALJ committed any errors by failing to comply with the requirements of SSR 82-62 when determining that Plaintiff could return to her past relevant work as a

telemarketer, any such errors would be harmless because the ALJ determined that Plaintiff could also perform the jobs of a cashier, assembler, and bookkeeper.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (recognizing applicability of harmless error analysis in Social Security context).

### IV.  VE and DOT

Plaintiff argues that the ALJ erred by relying on testimony from the VE that conflicted with the DOT.  Pursuant to SSR 00-4p, before an ALJ relies upon a VE's testimony to support a disability determination, the ALJ must identify and obtain a reasonable explanation for any conflicts between the VE's testimony and the DOT, as well as explain in the decision how any such conflicts were resolved.  *See* SSR 00-4p; *see also Haddock v. Apfel*, 196 F.3d 1084, 1089-92 (10th Cir. 1999).  SSR 00-4p provides that the ALJ has an "affirmative responsibility" to ask the VE about any possible conflicts between the VE's testimony and the DOT.  SSR 00-4p.  If a VE's testimony appears to conflict with the DOT, the ALJ must then obtain a reasonable explanation for the apparent conflict.  *See id*.

In this case, the ALJ specifically asked the VE whether his testimony conflicted with the DOT.  The VE testified that, other than his reduction in numbers for the jobs available, his testimony was consistent with the DOT.

Notwithstanding that testimony, Plaintiff contends that the VE's testimony does in fact conflict with the DOT concerning the job of telemarketer and, accordingly, the ALJ erred by relying upon the VE's testimony in that regard.  Specifically, Plaintiff contends that the VE's

testimony concerning a sit/stand requirement and the limitations on working with the public conflicts with the DOT requirements for a telemarketer.

With respect to the sit/stand requirement, Plaintiff has failed to persuade the court that there is any conflict between the VE's testimony and the DOT requirements for a telemarketer. As noted by the Commissioner, the DOT does not contain any information concerning a sit/stand option for telemarketers, so it is difficult to see how such a conflict could exist. Nevertheless, even if the court assumes for the sake of argument that there is a conflict, the court concludes that the ALJ adequately explored that issue with the VE. The ALJ specifically asked whether the VE's reduction in the number of available jobs was to account for the sit/stand option, and the VE indicated that was indeed the purpose for the reduction. Further, as indicated above, when the ALJ asked whether the VE's testimony conflicted with the DOT, the VE indicated that his testimony was consistent with the DOT with the exception of his reduction of the number of available jobs. Accordingly, to the extent the ALJ had any responsibility to ask the VE about the sit/stand option for the job of telemarketer pursuant to SSR 00-4p, the court concludes that the ALJ fulfilled that responsibility.

Concerning Plaintiff's limitations on working with the public, the court concludes that any error committed by the ALJ in failing to ask the VE about conflicts with the DOT's requirements for a telemarketer was harmless. To the extent the ALJ committed an error by failing to comply SSR 00-4p with respect to Plaintiff's limitations on working with the public as a telemarketer, any such errors would be harmless because the ALJ determined that Plaintiff

14

could also perform the jobs of a cashier, assembler, and bookkeeper.  *See Shinseki*, 556 U.S. at 409; *see also Fischer-Ross*, 431 F.3d at 733-34.

For these reasons, the court concludes that the ALJ did not err by relying on the VE's testimony.

<u>**CONCLUSION AND ORDER**</u>

The court concludes that all of Plaintiff's arguments fail.  Therefore, **IT IS HEREBY ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

**IT IS SO ORDERED**.

DATED this 23rd day of March, 2012.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge